[No. 6320.]

ROBERTS ET AL. v. ROBERTS.

1. Contracts—Construed—A suit by wife against husband, praying divorce and alimony, was composed, the husband agreeing to convey certain property and make certain payments to the wife, and the wife agreeing, "to accept the payments herein made as a full settlement of the property rights between the parties, and the differences as they now exist." At the institution of the suit the wife was the separate and sole owner of certain lands which she had bargained to another. A deed had been executed by both husband and wife, conveying the land to the purchaser, and, by permission of the wife, was in possession of the husband, to be delivered to the purchaser. In the divorce suit, this transaction was set up, and an injunction was prayed to restrain the husband from delivering the deed and receiving the purchase money. Held, that the clause quoted referred only to the claims of the wife to the husband's property, and had not the effect to entitle him to receive and retain the purchase money of the wife's land.—(20, 21)

2. ——Construction—That a construction of a contract for

which a party contends will render it grossly unjust and unfair
to the other parties, is a persuasive reason to reject it.—(21)

3. **Corporation—Notice to Managing Officer**—A corporation
is affected by the knowledge of its president and managing
officer, in a transaction in which it is represented by him.
—(21)

*Appeal from Denver District Court*—Hon. GREE-
LEY W. WHITFORD, Judge.

Mr. MEL EMERSON PETERS and Messrs. BONNEY
& RITTER for appellants.

Messrs. TONEY, JOHNSON & TONEY for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the
court:

At a time when Charles E. Roberts, one of the
appellants, and Mary A. Roberts, the appellee, were
living together congenially as husband and wife, she
was the owner of a certain eighty acres of land, upon
which she had filed, under the Timber and Stone Act
of the United States, and upon which she had made
all proofs and had done all things necessary to entitle
her to receive a government patent in due course.
A certain party desired to purchase the land and
agreed to pay $6,000.00 for it.    Roberts and his wife
executed a deed for the land to the purchaser.    This
deed was taken for delivery to the purchaser, but the
latter, for some reason, desired to wait before paying
the money, until the patent had actually issued.
Roberts retained the deed, pending the issuance of
the patent.    His divorced wife appeared on the scene,
and he organized the Ingleside Investment & Mercan-
tile Company, the other appellant..    He gave his
former wife shares of stock in this company.    He
was its president and manager. .He transferred all
of his property. to this. company, and attempted to
transfer to it the deed of the land executed by his
wife and the proceeds of the sale.    There is enough

evidence, circumstantial and otherwise, to indicate that Roberts and his former wife intended to operate and use his property and the $6,000.00 of purchase money, through this company, for their benefit to the exclusion of the appellee, Mrs. Roberts. In this state of affairs, Mrs. Roberts began a suit for divorce against Roberts in the district court of Larimer county, joining as defendants the purchaser of the land, the former wife, and the investment company, and setting up in her complaint a long recital of extreme and repeated acts of cruelty on the part of defendant Roberts; that Roberts and his former wife, from whom he had been divorced, had entered into a conspiracy, the object of which was to rid Roberts of his wife, and to take such steps as would be necessary to vest, in the former wife, all or a large part of Roberts's property, or to so dispose of his property as to exclude Mrs. Roberts from any benefit therein; that pursuant to this conspiracy the investment company was formed for the purpose of acquiring all of Roberts's property; that he was possessed of property to the value of $25,000.00, and that he had already transferred the larger part of it to the company in pursuance of the conspiracy, and in an attempt to defraud Mrs. Roberts, and to deprive her of the benefit thereof, and of alimony, in the event she should endeavor to procure a divorce. She also set out her ownership of the land, the execution of the deed, its delivery to Roberts for the purpose of ultimate delivery to the purchaser; that Roberts intended, through the company, to appropriate the $6,000.00 of the purchase money belonging to her, and she would thus be deprived of it. She prayed for a divorce, for alimony in the sum of $10,000,00, for attorney fees and costs, and temporary alimony for the support of herself and child, and that an injunction issue restraining Roberts and the mercantile company from

disposing of any of the property; that Roberts be restrained from delivering the deed and receiving the purchase money, and that the purchaser be restrained from paying the money to Roberts. Roberts filed an answer to this complaint, controverting its allegations. Afterwards, and upon the solicitation of Roberts, a reconciliation was effected between him and his wife, and a stipulation was entered into, wherein Roberts agreed to give Mrs. Roberts $1,900.00, to be made up of the appraised value of a house and lot in Fort Collins, which was to be deeded to Mrs. Roberts, and the balance in cash; also, Roberts agreed to pay the costs of the suit, to pay the attorneys of Mrs. Roberts, fees in the sum of $500.00, and to pay certain debts which Mrs. Roberts had contracted for dry goods, clothing, laundry and hotel; to dissolve the mercantile company, and to treat Mrs. Roberts in a husband-like manner; and in consideration of all this, Mrs. Roberts agreed to dismiss the suit, together with the injunction issued against Roberts, and to deliver to Roberts's attorneys certain papers, held in escrow pending the suit by one Edwards, among which was the deed, though Mrs. Roberts testified that she thought the deed was with her attorneys; and she agreed, in the language of the stipulation, "to accept the payments herein made as a full settlement of the property rights between the parties and the differences as they now exist." Upon this stipulation, the suit was dismissed. In order to obtain the money to make the payments provided in the stipulation, Roberts executed his note to the Poudre Valley National Bank for $2,500.00. The deed was deposited with the bank as collateral security for this note. The bank was to send on the deed for delivery to the purchaser, upon the payment of the purchase price of $6,000.00, and out of this the bank was to pay the note. Mrs. Roberts testified in

the present case that she did not understand that the deed was thus deposited as security, but the court held that the circumstances under which the deed was deposited gave the bank a lien on the purchase money for the amount of the note. The house and lot which was to be deeded to Mrs. Roberts was appraised at $900.00, and was deeded to her as trustee for her minor child, by a former marriage, who had been adopted by Roberts. Out of the money obtained on his note, Roberts paid off a mortgage on the house and lot, left $1,000.00 with the bank for Mrs. Roberts, paid her attorneys $500.00, paid the few dollars in bills, provided by the stipulation to be paid, and the costs of the suit. Within a month after this settlement, Mrs. Roberts began the present action against the purchaser in the deed, the Denver National Bank, and Roberts, alleging her ownership of the eighty acres of land, the sale of it to the purchaser for $6,000.00, the execution of the deed and its delivery to Roberts for ultimate delivery to the purchaser; its delivery to the Poudre Valley National Bank by Roberts, to be sent by the latter bank to the Denver National Bank, then to be delivered to the purchaser upon the payment of $6,000.00, and further alleging, that the patent had been issued for the land, and that the purchaser was ready to pay the purchase money; that Roberts had driven his wife from home, had abandoned her and ceased to support her, and that he, having possession of the deed, asserted and claimed that he was entitled to receive all of the purchase money in fraud of the rights of his wife; that he was not entitled to receive it, but, if not restrained by the court, he would receive it and apply it to his own use and deprive her of it. Afterwards, the Poudre Valley National Bank intervened, claiming a lien on the purchase money on account of the note of Roberts which it held; also, the Ingleside Invest-

ment & Mercantile Company intervened, claiming the
purchase money by transfer from Roberts.   The pur-
chaser paid the money into court, received the deed
and was dismissed.   It is about this purchase money
deposited in court that this litigation is concerned.
After a hearing of the issues involved, the court be-
low found that the Poudre Valley National Bank was
entitled to the amount of the note, out of the purchase
money, and ordered that that amount be paid to it;
the court also found that the mercantile company
never had any title or interest in the land or the pur-
chase money, and ordered that its petition be dis-
missed; also found that Roberts never had any right
or title to the land or to the purchase money; also
found that Mrs. Roberts was the owner of the land
and of the purchase money, and directed the balance
of the purchase money left, after paying the claim
of the intervenor bank, be paid to her, and entered
judgment against Roberts for the amount so allowed
to be withdrawn by the bank.   In his answer, Roberts
sets out at length a great many matters occurring
prior to the settlement of the divorce suit, and then
sets out the settlement and stipulation, and alleges
that he complied with all the terms thereof.   In his
brief, Roberts says that he makes no claim to the
$6,000.00, by reason of the matters set out in his
answer, occurring before the settlement of the di-
vorce suit, and that he alleged those matters in his
answer merely by way of inducement, to show that
under the stipulation he was the owner of the money.
He denies any claim to the money on account of any
matters occurring before entering into the stipula-
tion, and asserts that the fundamental error of the
court below was in assuming or holding that his claim
to the money was based upon matters which were
alleged by way of inducement, whereas his claim is
based upon the stipulation, and he is earnest in his

protestation that he makes no claim by reason of matters occurring before. The question thus presented is, Was the $6,000.00 included in the property rights settled by the stipulation? The court below found against Roberts on that fact, for it held that he never did have any right in the money. The stipulation only professed to, and did, settle property rights; that is, rights in property. Roberts confesses, and the very things which he alleges in his answer by way of inducement, as he says, show, and the facts establish, that he had no right in his wife's land or the purchase money, but that she had all right to it. The only connection that Roberts had with it was the exercise of a certain permissive dominion over it by consent of his wife—such dominion as most husbands exercise over a wife's property with her consent. The delivery of the deed to him from the escrow holder could only mean the resumption of such dominion and not a change of ownership. Hence, there were no rights to settle between them as to the wife's property. On the other hand, she had rights in the property of her husband by way of alimony and maintenance, which she was asserting and endeavoring to have established in the divorce suit. Her rights in her husband's property were undefined and were only to be determined by decree of court. Roberts's rights in his own property, as against his wife, who was asserting her rights, were also undefined and to be so determined. Here then were the property rights—the right of the wife and the right of the husband in the property of the husband—that were for settlement in the divorce suit, and it is only the rights that existed and were for settlement that can be said to have been settled by the stipulation. There was nothing to settle as to the wife's property. Roberts had no right to it, and he now confesses that he claims no right to it by virtue of anything pre-

ceding the stipulation. The court, then, is sustained in its finding that Roberts never had any right in the property of his wife. The claim of Roberts to his wife's property, by virtue of the stipulation, would lead to a result so inequitable and unjust as to demonstrate that it did not include the property of the wife. In the stipulation, he agreed to pay attorneys' fees for his wife, the costs of the suit and certain small bills that she had contracted for necessities. He was liable for those things in any event. He agreed to give her $1,900.00, made up of cash and the appraised value of a house and lot. By this stipulation, if it was intended as Roberts claims, she would give up $6,000.00 of her own property and her claim of $10,000.00 for alimony and maintenance out of the property of her husband, which she alleged was worth $25,000.00. According to the claim of Roberts, his wife gave him her $6,000.00, and out of this he paid what he agreed to pay in the stipulation. The investment company stands in no better position than Roberts. When he attempted to convey the money to the company, he knew whose property it was. He was the president and manager of the company, and his knowledge was its knowledge, and his position, known to himself, through him, was known to the company. To say that the wife's property was not embraced in the stipulation does not vary the terms of a written contract. It is only determining what was not included within a general description of the property with which it deals.

In this view of the matter, the particular errors assigned and argued by Roberts in his brief need no further notice, for they are all based upon the fundamental conception that the $6,000.00 was embraced in the property rights settled by the stipulation. The judgment is, therefore, affirmed.     *Affirmed.*

CHIEF JUSTICE CAMPBELL and MR. JUSTICE HILL concur.